# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **KLITON DURI,** ) | Case No. 1:07 CV 1599 |
| ) | |
| **Plaintiff,** ) | **JUDGE DONALD C. NUGENT** |
| vs. ) | |
| ) | **MEMORANDUM OF OPINION** |
| **MARK HANSEN, District Director** ) | **AND ORDER** |
| **Cleveland District Office, United** ) | |
| **States Citizenship & Immigration** ) | |
| **Services, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

On October 4, 2007, this Court issued a Memorandum of Opinion and Order in this case which relied in part on the Fifth Circuit opinion, *Walji v. Gonzales*, 2007 WL 1747911 (5th Cir. June 19, 2007). That opinion was withdrawn and replaced by the Fifth Circuit, subsequent to the completion of briefing in this action. *See Walji v. Gonzales*, 2007 U.S. App. LEXIS 22102 (5th Cir. Sept. 14, 2007). (ECF # 15). Consequently, this Court's previous Memorandum of Opinion and Order is also withdrawn. The following opinion is substituted:

This matter is before the Court on Defendants' Motion to Dismiss or, in the Alternative, Motion to Remand (ECF #10). Plaintiff has filed his Response in Opposition and Defendants have submitted a Reply brief. The matter is now ready for decision. For the reasons that follow, Defendants' Motion is granted in part and denied in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Kliton Duri filed his Petition for Hearing on Naturalization Application and Request for Declaratory and Injunctive Relief in this Court on May 31, 2007, asking this Court to assume jurisdiction over his application for naturalization, to review de novo his application and grant his application for naturalization or, in the alternative, order Defendants to promptly adjudicate, within 60 days, his pending application for naturalization.  (ECF #1).  Plaintiff also seeks a declaration holding unlawful: (a) the failure of Defendants Chertoff, Gonzales, and Hansen to adjudicate Plaintiff's application for naturalization within a reasonable period of time; (b) the failure of Defendants Gonzales and Mueller to complete the name check and other background checks within a reasonable period of time; and (c) Defendants' failures to take all necessary steps to adjudicate Plaintiff's naturalization application within 120 days of the date of the examination. Finally, Plaintiff seeks reasonable attorneys fees and costs pursuant to the Equal Access to Justice Act. (ECF #8 at p.7).  Plaintiff contends that this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff's claims arise under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq*., specifically, 8 U.S.C. § 1447(b) because the United States Citizenship and Immigration Services ("USCIS") has failed to adjudicate the application despite the passage of more than 120 days since the date of Plaintiff's naturalization examination.  Plaintiff also asserts that this Court has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, the Administrative Procedure Act, 5 U.S.C. §555 and §701 *et seq*., and the Mandamus Act, 28 U.S. C. § 1361.  (ECF #8 at p. 2)

Plaintiff filed his application for naturalization (Form N-400) on or about March 16, 2006.  (ECF #10-2 at p. 1).  On June 26, 2006, Plaintiff was interviewed at the Cleveland USCIS

Office on his naturalization application. (ECF #10-2 at p.2). In addition to an interview, the USCIS conducts various forms of security and background checks including requesting a name check through the Federal Bureau of Investigation ("FBI"). The USCIS submitted Mr. Duri's name check request to the FBI on or about March 28, 2006. (ECF #10-2 at p. 2). The USCIS background check, including the FBI name check are not yet completed. (ECF #10-2 at p. 2). Plaintiff filed the current action on May 31, 2007, while his naturalization application remains pending with USCIS.

**STANDARD OF REVIEW**

There are two categories of motions to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)–facial attacks and factual attacks. *U.S. v. Ritchie*, 15 F.3d. 592, 598 (6th Cir. 1994). A facial attack challenges the court's subject matter jurisdiction based upon the sufficiency of the pleadings. In considering a "facial attack", a court will consider the material allegations of fact set forth in the complaint as being true and construe them in a light most favorable to the nonmoving party. *U.S. v. Ritchie*, 15 F.3d. at 598; *Cooley v. United States*, 791 F.Supp. 1294 (E.D.Tenn. 1992); *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

In considering a "factual attack", challenging the court's subject matter jurisdiction based upon the facts as alleged in the pleadings, a court will not presume the allegations of fact in the complaint to be true. *Ritchie*, 15 F.3d. at 598. Rather, the district court will weigh the conflicting evidence to determine whether the proper jurisdiction exists. See *Cooley v. United*

3

*States*, 791 F.Supp. 1294 (E.D.Tenn. 1992); *Ohio Nat. Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990).  In weighing the evidence, the court has broad discretion to consider affidavits, documents outside the complaint, as well as conduct a limited evidentiary hearing, if necessary, to resolve disputed jurisdictional facts.  However, at all times and on both types of attacks, the plaintiff bears the burden of demonstrating that the Court has jurisdiction over the subject matter.  *Ohio Nat'l Life Ins. Co.*, supra, 922 F.2d at 324; *Friedman v. United States,* 927 F.2d 259, 261 (6th Cir. 1991); *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990); *Gould, Inc. V. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 451 (6th Cir. 1988); *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

## DISCUSSION

Up until 1990, United States District Courts sat as naturalization courts and were vested with exclusive jurisdiction to adjudicate applications for naturalization.  *See* 8 U.S.C. § 1101(a)(24), 1421(a) (repealed 1990); *see also*, *Shomberg v. United States*, 348 U.S. 540(1955).  Pursuant to the Immigration Act of 1990, Congress transferred the power to naturalize from the district courts to the Attorney General (and now to the Secretary of DHS).  The Secretary of DHS now has the "sole authority to naturalize persons as citizens of the United States."  See 8 U.S.C. § 1421(a).  Under the administrative naturalization process, USCIS is responsible for adjudicating naturalization applications, including conducting a preliminary investigation of the applicant, interviewing the applicant, conducting further investigation if necessary, and determining whether to grant or deny the application.  See INS § 335(a), (b), (c); 8 U.S.C. §

1466(a), (b), (c). If USCIS initially denies an application, the applicant may seek administrative review of the denial by requesting a hearing before a supervisory immigration officer. INA § 336(a); 8 U.S.C. §1447(a); 8 C.F.R. § 336.2(b).

Under this statutory scheme, the district courts have jurisdiction to review naturalization applications in two scenarios. First, if the Secretary of DHS denies an application for naturalization, district courts have jurisdiction to review the denial de novo. INA § 310(c), 8 U.S.C. §1421(c). Second, district courts have jurisdiction under INA § 336(b), 8 U.S.C. § 1447(b), to hold a hearing on the naturalization application if USCIS has not granted or denied the application by "the end of the 120-day period after the date on which the examination is conducted under such section." In such a case, the court "may either determine the matter or remand the matter, with appropriate instructions, to determine the matter." INA § 336(b), 8 U.S.C. § 1447(b).

The burden is on a lawful permanent resident to establish the two requirements necessary to qualify for naturalization: residency and good moral character. 8 U.S.C. § 1427(a), (e); 8 U.S.C. § 1429; 8 C.F.R. § 316.5, 316.10. The USCIS is statutorily required to conduct background investigations before adjudicating a naturalization application to determine if the applicant is eligible for naturalization and is not a risk to national security or public safety. *See* INA § 335(a), (b); 8 U.S.C. § 1446(a), (b); see also, 8 C.F.R. § 335.1(2004); 8 C.F.R. §335.2(b). Therefore, by law, USCIS cannot proceed to adjudicate a request for naturalization until all background and security checks have been completed. The government contends that the background checks include:

(a) a Federal Bureau of Investigation (FBI) fingerprint check for relevant criminal history records on the alien (e.g., arrests and convictions); (b) a check against the

5

> DHS-managed Interagency Border Inspection System ("IBIS"), which contains records and "watch list" information form more than twenty federal law enforcement and intelligence agencies and which includes, but is not limited to, information related to persons who are wanted or under investigation for serious crimes or suspected of terrorism-related activity; and (c) an FBI name check, which is run against FBI investigative databases containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS.

(Zarlenga Decl. ¶3). However, the Code of Federal Regulations defines a full background check as follows:

> (1) Confirmation from the Federal Bureau of Investigation that an applicant does not have an administrative or a criminal record.
>
> (2) Confirmation from the Federal Bureau of Investigation that an applicant had an administrative or a criminal record.
>
> [or]
>
> (3) Confirmation from the Federal Bureau of Investigation that two properly prepared fingerprint cards (Form FD-258) have been determined unclassifiable for the purpose of conducting a criminal background check and have been rejected.

8 C.F.R. §335.2(b).[1]

At issue in this case is whether the examination referred to in 8 United States Code, § 1447(b) is simply the initial interview with a USCIS officer or whether it encompasses the entire background investigation necessary to adjudicate a naturalization application. If the examination is simply the interview, then this Court would have subject matter jurisdiction in this action because more than 120 days has passed since Plaintiff was interviewed by USCIS. However, if "examination" means the completion of the background investigation, that process is not yet

---

[1] The USCIS can, of course, conduct any other kind of background investigation that it deems necessary and proper, as long as it is otherwise in compliance with its statutory and regulatory mandates.

complete and this Court would not have jurisdiction because the 120-day adjudication period would not yet have been triggered. Courts across the country have been divided on this issue. After careful review of the statutory scheme and applicable case law, this Court now holds that the word "examination," as used in 8 U.S.C. §1447, was meant to refer to an applicant's initial interview with USCIS.

Having reviewed the statutory and regulatory provisions addressing this matter, it appears that both the clear language of the statute and the regulatory provisions relating to the statute intended that the term "examination" in 8 U.S.C. §1447 refer to the initial in-person interview between an applicant for naturalization and a Service officer at the USCIS.[2] The Code of Federal Regulations clearly distinguishes between the investigation and the examination of an applicant as there are separate provisions in the Code for "investigation of applicant" and for "examination of applicant." 8 C.F.R. §§ 335.1 and 335.2. The "investigation" consists, at a minimum, "of a review of all pertinent records, police department checks, and a neighborhood investigation..." of the applicant. 8 C.F.R. §335.1. The "examination," on the other hand, is described as a personal appearance by the applicant "before a Service officer designated to conduct examinations" that "shall encompass all factors relating to the applicant's eligibility for naturalization." 8 C.F.R. §335.2 (a). In addition, the regulations dictate that criminal background checks by the FBI be completed BEFORE the "examination" takes place. (8 C.F.R. §335.2 (b). By mandating that this

---

[2] The Court recognizes that this opinion is at odds with its prior decision in *Yarovitskiy v. Hansen*, No. 1:07 CV 1174 (N.D. Ohio 2007), however, since the briefing in that case, there appears to have been a shift in the weight of the authority around the country on this issue. *See, e.g., Walji v. Gonzales*, 2007 U.S. App. LEXIS 22102 (Sept. 14, 2007). The reasoning set forth in that opinion, and the cases it follows is both reasonable and persuasive.

portion of the background check be completed before the "examination" occurs, this provision plainly intends to make a distinction between these two processes.

The regulations also reiterate the language in 8 U.S.C. § 1447, stating that a "decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under §335.2." 8 C.F.R. §335.2 (b). Thus, the statute and the regulations both contemplate that the "examination" is an event that occurs on one specific date. Further bolstering the argument that the initial interview is the examination referred to in 8 U.S.C. §1447(b) is the requirement that any continuance of the "initial examination" or "reexamination" of the applicant must be "scheduled within the 120-day period after the initial examination." 8 C.F.R. §335.3.

This Court, therefore finds that the 120-day period for adjudication was triggered by the Plaintiff's initial interview with USCIS on June 22, 2006. The 120 period has expired without an adjudication, thus, pursuant to INA §336(b), 8 U.S.C. § 1447(b), the Court has jurisdiction to hold a hearing on the naturalization application, and to either determine the matter or remand the matter with appropriate instructions to the [USCIS] to determine the matter. *Id.*

While we agree that there has been a technical violation of the statute, we have no other practical choice but to remand the action back to the USCIS with the instruction that it adjudicate Mr. Duri's application within 120 days after the USCIS receives (or received) the results of the full background check (as defined in 8 C.F.R. §335.2(b)) conducted by the Federal Bureau of Investigation. Granting citizenship to a person is a very serious matter with permanent and potentially dangerous repercussions. Because no entity, including this Court, can properly adjudicate a naturalization application before the mandatory background investigations are

8

complete, the Plaintiff would gain nothing by having this Court adjudicate the application rather than remanding it back to the USCIS for decision following the completion of the FBI background checks. Further, if the Court were to force the USCIS to make a decision on the application without the benefit of the FBI background check, it is very possible that the Plaintiff's application would be denied in order to avoid any risk of compromising national security.

In this case, the USCIS is at fault for scheduled the initial examination prematurely. The FBI had not completed the mandatory background check on the Plaintiff, therefore, according to 8 C.F.R. §335.2(b), the USCIS should not have scheduled the Plaintiff's examination. There is no statutory or regulatory limitation on how long the FBI has to complete its check, however, there is a limit on how long the USCIS has to make a decision on an application after an initial interview with the applicant has been conducted. In order to avoid this issue in the future, the USCIS should refrain from scheduling initial interviews until after the FBI background check is complete.

## CONCLUSION

For the reasons stated above, the Court's previously issued Memorandum Opinion and Order (ECF #15) is hereby withdrawn. Defendants' Motion to Dismiss or in the Alternative to Remand (ECF #10) is Denied in part, and Granted in part. Accordingly, this case is remanded back to the United States Citizenship and Immigration Services with the instruction that Mr. Duri's application for naturalization be adjudicated within 120 days after the USCIS receives (or received) the results of a full background check (as defined by 8 C.F.R. §335.2(b)) from the Federal Bureau of Investigation. The USCIS is further instructed to follow the requirements of 8 C.F.R. §335.2(b) and

to refrain from scheduling initial interviews with applicants for naturalization until after the completion of a full background check (as defined by 8 C.F.R. §335.2(b)) by the FBI.

IT IS SO ORDERED.


                                                      s/Donald C. Nugent
                                                 JUDGE DONALD C. NUGENT


DATE:   October 19, 2007